Mr. Foley. Thank you, Your Honor. May it please the Court, my name is Doug Foley. I represent State Farm. This case is, I should tell you, first of all, I'd like to reserve two minutes for rebuttal if I may, first of all. This case involves a question of the sufficiency of the evidence to support a jury verdict. This is a question that was submitted to the jury with respect to material misrepresentation and the question of whether or not the insurers intentionally participated in causing a fire at their home. The jury did determine that, in fact, there were material misrepresentations during the course of the insurance claim and that the insurance company had detrimentally relied. The trial court determined that there was insufficient evidence of detrimental reliance and, as a result, reversed the jury verdict and granted judgment to the plaintiffs in this case. What did the jury conclude with respect to the Leavenworths having intentionally set the fire, being responsible for setting the fire? They determined that there was no intentional burning by the Leavenworths in this particular case. There were two questions submitted. The first question was whether or not an arson had been committed by the insurers, and the answer was no to that. The other question was whether material misrepresentations, false statements of fact, provided to the insurance company. And that did go to the jury, and there was a finding that, in fact, false statements had been made. There were three areas in which false statements had been made, one with respect to the location of an incendiary, which was kerosene, in what's called the furnace or storage room where the fire originated. The other was their activities, the location of Mr. and Mrs. Leavenworth and what they were doing. Counsel, before you go through the three misstatements of fact, I'm a little puzzled by what this means once the jury found that there was no arson. Once they found that there was no arson, effectively they're going to find that you're responsible for compensating your insurer for this fire. No, the policy does preclude coverage where there's material misrepresentations of fact as well. But you don't have arson. That is correct. If you don't have arson, then you've got to find some other reason for not paying this claim. So you've got somebody whose house now has been determined to have been burned not by arson, which we generally consider to mean it's going to be covered by insurance. Right. The finding would actually be, I think, not by arson by the insurer. The jury doesn't make any finding whether there's an arson or not. It's just whether or not the insurer's intentionally caused the fire. And the jury's conclusion and what's binding on us is these folks did not. That is correct. For the purpose of this record, there's no question about that. For the purpose of this record as well, I respectfully submit it is also binding on the court that the jury found they made false statements during the course of the claim. So what would you have relied on given that these folks didn't set this fire? What we'd rely upon is the honesty and accuracy of what they are saying. And if we have to incur detriment, which is the Islamazar standard, American States v. Islamazar, which were incorporated into the jury instructions, if there are material misrepresentations of fact, there is no coverage. That is in the jury instructions, and it's at our evidence record 39 in our brief. All right. And I know we've got the question of the kerosene. You were going to go through those. The location of the kerosene. You had their financial condition. Correct. Third thing. Correct. The third thing was their location and activities. The question is whether they had crisscrossed during the morning's activity. Absolutely. And whether or not they would have been in the room at the time that our experts said the fire would have initiated. And, you know, there are a lot of ways in which we can look at why. What did your client do differently in reliance? Let's assume for the sake of the argument right now that they made a misstatement and perhaps a deliberate misstatement about the kerosene, and they didn't tell you about all the debt they had run up and so on. So what did State Farm incur here in expenses that you would not have incurred otherwise? Sure. It is an arson investigation, whether or not it's actually found ultimately on the back end of an investigation in terms of even a jury verdict as to whether it's an arson or not. It is still an arson investigation. And a lot of claims, of course, are investigated to determine whether or not the insureds are ruled in or ruled out. And part of the matrix of looking at that is whether or not the insureds have a financial motive for causing this loss, hence the materiality and the importance of the financial information, their opportunity to have set a fire. In other words, were they in a location? These folks told you they didn't have financial problems. Correct. They told you they didn't have financial problems. You might have relied to your detriment by not investigating this as an arson. But you did. We did investigate. You behaved exactly as though you didn't believe them. That is correct. What's the problem? Where's the detrimental reliance? Because you behaved as though you didn't believe them, so what's to your detriment? Well, the detrimental reliance, if it has to be looked at from that standard, you would never, ever have a claim that would ever be denied. You would never have a claim that would never, ever be investigated to determine what the actual truth is. The question of subjective belief, we respectfully submit, is not the standard. Whether or not the insurance company is able to put somebody up on the standard that says we were fooled and we literally believe these people isn't the test. The question is you can go in skeptically. You can go in open-minded. You could go in maybe subjectively believing. But that state of mind in the insurance company is irrelevant. I could understand, following up on my colleague's question, I could understand if an insured told the company and its representatives certain important things that caused them to go off on a track assuming complete honesty and forthrightness and paying the claim quickly and closing up their file only to later discover that there were financial problems, that there was an ignition fluid near the source of the fire, and that they had deep-set financial problems. That I can understand. But I guess I'm thinking the same way Judge Videy is. I don't understand how it hurt you here. Well, I think it's pretty simple in terms of the context of the investigation. Representations are made. We don't know whether to believe them or not. We have to investigate to determine the truth of the investigation. And so the question of subjective belief or being fooled or finding out later on after the file is paid and closed, we respectfully submit it's not the test. It's finding out. Was there ever any doubt that there was kerosene near the source of the fire? Yes, because they claimed that they didn't know how it got there. They didn't know where the kerosene was. No, no, no. You've got to listen to the question.  There was a kerosene. We believe there was a kerosene jug there. Whether or not there was actually kerosene in it and actually whether or not that had been lit was a question that was investigated. So, yes, there was doubt. But there wasn't a serious question as to whether there was kerosene in the house because they were using that to clean the clippers. That is exactly correct. And the location of that kerosene was critical in determining whether or not this was an incendiary fire. And we were provided false information about that up until it was investigated. The question of material misrepresentation in the insurance context seems to me, you know, of greatest interest to the insurance company at the time that you're underwriting the policy. So that if they had misrepresented, for example, their financial condition or if they had misrepresented their activities in the home, you didn't know they were running a dog care business out of their home where they would be maintaining kerosene in the house as opposed to out in the storage shed for mowing the lawn or doing whatever. Those kinds of things might go to the question as to whether you've been misled in underwriting the insurance policy in the first place. But given that you were going to conduct an arson investigation anyway, it's a little difficult for me to see where the detrimental reliance is. Well, if they offer certain things up that we didn't have certain activity or conduct, we aren't associated with the fire, that our financial condition is fine, and we don't know, we don't know whether to subjectively believe or not when we investigate, we respectfully submit that is the detriment. And finding out the cost of that, the examination, your oath, hiring counsel to take the support statement. Which we were going to do anyway because you didn't believe them. We didn't know whether to believe them or not. And we can't say that from the very beginning you can't say they did it. But you were still going to do them. You were still going to put them under examination under oath, right? This is required as a condition of their policy. Well, not necessarily because it depends what they say from the very beginning about what their activities are. In terms of the investigation, you're investigating what they represent to see if they're true or not. But if they said, gosh, we had kerosene in the room, and we were in bad financial condition, and the fact of the matter is that we knew where each other was as we crossed in the morning, would you have investigated this thing any less? I couldn't tell you because that was not the state of affairs. They would have investigated it, right? The insurance company may very well have investigated at that location. Once they told you that they were in bad financial condition, you would have investigated this to the hilt. It could be, but I can't assume those facts because those aren't the facts we have. Right. But common sense tells us, and you've been in the insurance business for a long time defending them, they would have insured this, they would have investigated this to the hilt. Right. And if we assume that that hypothetical state of facts is true, then I agree that we couldn't detriment or rely if they told us the truth about those things. And so there would be no reliance factor, but the cost and expense of finding the truth is the issue. And I'm inside my two minutes right now. We'll give you a minute for a rebuttal. Thank you, sir. Add to your time. Thank you for your argument. All right. Thank you. Ms. Hedegar? This is the Court. Pam Hedegar on behalf of the plaintiffs in this case, Mr. and Mrs. Leavenworth. I believe your question is that counsel actually got to the crux of what the real disagreement is on this case, and that is whether or not under Oregon law, in order for an insurance company to avoid paying on a claim on the grounds of misrepresentation or detrimental reliance, whether or not there has to be a subjective belief by the insurance company as to the alleged misrepresentations. And throughout this proceeding, in the arguments post-trial and in the arguments on the jury instructions and the verdict form, the insurance company has taken the position that Islamazar does not require a subjective belief in the alleged misrepresentations. And that really is where the disagreement is. The insurance company has made it clear in the testimony and in the arguments that have been presented post-trial that they never believed these alleged misrepresentations. Brian Kelly was the representative for State Farm. He was the representative. They gave the 30B-6 deposition where we asked him to acknowledge and identify each misrepresentation that they were relying on in their affirmative defense. He's also the representative that testified at length at trial. And Mr. Kelly made two things very clear. One was that the arson investigation started the day of the fire. Before any statements were obtained from Mr. and Mrs. Leavenworth, they immediately called in an arson investigator and they started the investigation. And the arson investigation included not only the original investigators, but once they couldn't determine where the fire started, they brought in additional experts to testify the different or to, excuse me, investigate and test the additional appliances to see if they could be a source of the fire, the washing machine and some of the other appliances in the business. The other thing that Mr. Kelly made extremely clear in his testimony was that he never believed these misrepresentations or alleged misrepresentations of the Leavenworths. His testimony was that when they described what they had done immediately before the fire, that's that location in the home, that it was obviously inconsistent and unbelievable to him when it was first made. So there was no subjective belief in the truth of those statements, and therefore it cannot be the basis of a detrimental reliance of points. Did the fire department investigate this? They did. And what did they conclude about the source of the fire? The kerosene. They didn't find what was the actual start of the fire, but they also did not find that there was an arson. Did they conclude that there was no arson or that it was an inconclusive finding? They found kerosene as an accelerant. Right. You know, Your Honor, I don't know that they made a distinction between the two. They just found that there was a fire in there, that the accelerant was the kerosene, which was what caused it to spread further, but they did not do a criminal investigation. They never turned it over to the district attorney's office or brought in any law enforcement officers. It was merely just the fire department, and they closed the file once they determined what the source of the fire was, and I believe that they thought that there was an electrical cord related to or maybe lint from a dryer that was being vented out of the back of a building that had some remodeling done on it that wasn't getting sufficient air. But I believe that you could infer, if they didn't specifically say there was no arson, you can infer there was no arson because they didn't send it out for review to the district attorney's office. So all of the testimony from the insurance company, in fact, the arguments from Mr. Foley on behalf of the insurance company were that there was never a subjective belief in the statements. And, in fact, all of the investigation costs were trying to determine and prove that there was, in fact, arson, and the jury found on behalf of Leavenworth's for the arson and found that they did not intentionally set the fire. So under the standard in Oregon, the Eslamazar case specifically says that when there's detrimental reliance in avoiding an insurance claim, you have to prove the common law elements of fraud. And one of the common law elements of fraud, that's the Webb case and the Musgrave case, are that there is a subjective belief in the misstatements. And Eslamazar goes on to even acknowledge the fact that there are cases, and they recognize that there will be cases, when an insurance company doesn't believe the representations, therefore denies the claim, and will not have the avoidance based on a misrepresentation available to them because they weren't misled, they didn't rely on the statements. And we believe that's exactly what happened in this case. There was absolutely no evidence for the jury to find that the insurance company believed these statements, whether or not they were misrepresentations, whether or not they were material. There was no evidence to find that the insurance company subjectively believed them, relied on them to their detriment. And thus, I believe Judge Hogan was correct in entering the judgment, notwithstanding the verdict. Thank you. All right. Thank you for your argument. Mr. Foley, rebuttal. I believe the issue does boil down to this, that if the insured makes a representation and it is true, then the insurance company obviously cannot rely. But if the insured makes a representation and it is not true, then the insurance company can rely. We don't believe that there's any basis in Oregon law, and the leading case on this is Islamazar, which is incorporated in the jury instructions, that requires subjective belief. Any investigation, any good faith investigation I would respectfully submit, would go in there with not knowing, not believing, not disbelieving, but simply not knowing. There's no evidence that the insurance company believed or didn't believe in terms of any subjective sense of the matter. All there is is simply investigation, which is what any insurance company is entitled to do on any fraud investigation, whether it be arson or a non-arson case. And in this case, we had two prongs. We had the arson issue and we had the representation issue. And people will make misrepresentations to try to distance themselves or cover up what they did, or even if they didn't do it, to try to mislead the insurance company. That is the misrepresentation prong, which is specifically discussed in Islamazar. And as I said, the Court did appropriately instruct the jury on that and said that to rely, the insurance company must act on its detriment, or in other words, change its position as a result of the representation. The Court did not give a jury instruction in this case. It says you have to subjectively believe. And I would suggest to you that if that were the law, that should have been the jury instruction. There's simply no appeal by the other side from the insurance instruction with respect to some sort of inadequacy about subjective belief. Subjective belief is not part of the instruction. It is the law of the case. And all it requires is the detriment. So we'd suggest to you that we have proven detriment because of the investigation about the representations. They were attached to the arson investigation, but as a separate prong and as a separate stand-alone inquiry, which was investigated to the expense of the insurance company, and that was testified to a trial. So we don't believe they can be parsed or separated in the sense that, you know, if there's no arson, that, you know, that automatically nothing else is relevant in an investigation. There are a lot of reasons why people try to throw people off the track, throw off the scent, make them, you know, look at different directions, try to put the stare, the gaze of the potential investigation in other directions, and that is the detriment to the company. It would be, I think, a novel proposition, the first time that Oregon law would ever be interpreted, if the Court were to hold this principle, that an insurance company now, in initiating an investigation of any kind, must believe the person before they investigate and while they investigate. And I would suggest to you that if that were the case, no one would ever investigate anything, because if you honestly, accurately, and truthfully believe in something, there's no reason to investigate it. So the standard we're offering would be one that would not be workable with the reality of investigation. You're well over your time. Thank you for your argument. Thank you both for your arguments. The case just argued will be submitted for decision. We'll proceed to the next case on the calendar, which is Balam-Chuk v. The Attorney General. If counsel will come forward, please.
judges: Nelson, Hawkins, Bybee